# EXHIBIT F2

Case 3:15-cv-01185-L   Document 1-7   Filed 04/20/15   Page 2 of 10   PageID 21

FILED
DALLAS COUNTY
2/6/2015 8:40:02 AM
FELICIA PITRE
DISTRICT CLERK

Freeney Anita

DC-15-01452
CAUSE NO.: _____

| | | |
|---|---|---|
| STATE FARM LLOYDS AS SUBROGEE OF EUN OG CHANG, | § § § | IN THE DISTRICT COURT |
| Plaintiff, | § § | |
| v. | § § | DALLAS COUNTY, TEXAS |
| TITEFLEX CORPORATION, GASTITE DIVISION, | § § § | |
| Defendant. | § | _____ JUDICIAL DISTRICT |

## PLAINTIFF'S ORIGINAL PETITION

**TO THE HONORABLE JUDGE OF SAID COURT:**

**COMES NOW, STATE FARM LLOYDS AS SUBROGEE OF EUN OG CHANG, "Plaintiff",** and complains of **TITEFLEX CORPORATION, GASTITE DIVISION**, hereinafter "TITEFLEX," and for cause of action would respectfully show the Court as follows:

### I. DISCOVERY PLAN

Pursuant to Rules 190.1 and 190.4 of the *Texas Rules of Civil Procedure*, notice is hereby given to the Court and the parties that the discovery to be completed in this case is intended to be conducted under Level Three of the stated rules unless otherwise ordered by the Court.

### II. PARTIES, VENUE AND JURISDICTION

1. Plaintiff, **State Farm Lloyds as Subrogee of EUN OG CHANG,** is an insurance company authorized to conduct business in the State of Texas and can be reached through counsel herein.

2. Defendant, **TITEFLEX CORPORATION, GASTITE DIVISION,** is a foreign corporation authorized to do business in the State of Texas and may be duly served with citation by serving its registered agent: CT Corporation System, One Corporate Center, Hartford, CT 06103-3220.

3. The "Property" is located at 4402 Stirling Drive, Garland, Dallas County, Texas 75043.

4. Venue of this suit is proper in Dallas County, Texas pursuant to Section 15.002 of the Texas Civil Practice and Remedies Code for the reason that the occurrence giving rise to this lawsuit is located in Dallas County, Texas.

5. The Court has jurisdiction over Defendant for the reason that Defendant is a corporation which is qualified to do business in the State of Texas and, at the

time this cause of action accrued, was conducting business in this state. The Court has jurisdiction over the controversy for the reason that the damages sued for are within the jurisdictional limits of this Court.

Plaintiff alleges that all conditions precedent are met.

## III.
## STRICT PRODUCTS LIABILITY

This case involves a products liability cause of action which arises from the design, manufacturing, and marketing defects of a Titeflex Corporation, Gastite Division, manufactured corrugated stainless steel tubing ("CSST") (hereinafter referred to as "product" or "product in question").

The CSST product in question was installed in a new home owned by Mr. Chang. The CSST product was designed and intended as a substitute flexible gas delivery system to the more robust black iron pipe.

At all times relevant to this matter, Defendant TITEFLEX was engaged in the business of designing, manufacturing, marketing, and distributing the CSST product in Texas, as well as across the United States, where the product has now been installed in well over six million (6,000,000) homes and businesses.

## IV.
## FACTS

At all times relevant hereto, Eun Og Chang was the owner of the property located at 4402 Stirling Drive, Garland, Dallas County, Texas (the "Property"). At all times relevant to this lawsuit, Defendant TITEFLEX was the manufacturer of the CSST that was installed in Mr. Chang's home, specifically at the time of the fire.

On May 21, 2013 a thunderstorm produced lightning that directly struck the Property; several minutes later, the Property was destroyed.

The Property was built in 2002. Gas plumbing at the Property is fairly common and demonstrates that a safer alternative design than CSST exists and is proven safe when subject to the same bolt of lightning. The CSST is an extremely thin-walled material with a wall thickness of a mere .010" (equivalent to four sheets of paper). As per Titeflex's Design and Installation Guide, the CSST is to be installed by bonding and grounding the CSST. As with virtually every framed home in the United States, the attic space is used to run other utilities including audio/visual component wiring and electricity. Mr. Chang was unaware of the plumbing

configuration in the home prior to May 21, 2013, he was unaware that CSST was used as a gas delivery system, he was unaware of CSST's physical properties, and was unaware of its dangerous and deadly propensities.

Despite the fact that the CSST was bonded and grounded in accordance with Defendant TITEFLEX's Design & Installation Guide, there was a catastrophic failure of the CSST product resulting in a fire.

## V. CAUSES OF ACTION AGAINST DEFENDANT TITEFLEX
## COUNT ONE -- NEGLIGENCE

Plaintiff incorporates the foregoing paragraphs by reference as though fully set forth herein.

Plaintiff would show that on the occasion in question, Defendant TITEFLEX owed a duty to exercise ordinary care in its design, preparation, manufacture, and sale of its CSST product. The CSST product in question was defective and unsafe for its intended purposes at the time it left the control of Defendant TITEFLEX and at the time it was installed in Mr. Chang's home. The CSST product was defective in that it failed to conform to the product design and specifications of other similar products. But for such occurrence, the probability that Defendant TITEFLEX's product would fail would have been lessened. Defendant TITEFLEX breached this duty and, as a direct and proximate result of its negligence, caused Plaintiff to suffer injury.

The negligent acts and/or omissions on the part of Defendant TITEFLEX include, but are not limited to, the following:

    a.    Supplying the defective CSST product in question which Defendant TITEFLEX knew subjected property and lives to an unreasonable risk of harm;

    b.    Supplying the CSST product in question to distributors, suppliers, and installers with the knowledge that the CSST product was prone to fail due to its inferior wall thickness, was defective and unreasonably dangerous to persons and property;

    c.    Failing to warn the public, specifically including Mr. Chang, of the defective condition of the CSST product, which it knew created an unreasonable risk of harm to real and personal property, and/or failed to warn the public and Plaintiff that the CSST product was prone to fail when subjected to the electrical charge from lightning;

    d.    Failing to conduct sufficient research and development for the CSST product before introducing it into the U.S. stream of commerce;

e. Failing to provide, establish and/or follow proper and adequate controls and/or procedures so as to ensure the safety and integrity of the CSST product in the marketplace;

f. Failing to design, construct, fabricate, inspect and/or test the CSST product in question in conformity with the prevailing industry and national standards, including, but not limited to, lightning strike testing;

g. Failing to design the outer jacket of the CSST product so that it would efficiently dissipate the electrical charge produced by a direct or indirect lightning strike;

h. Failing to institute a safer alternative design for the CSST product;

i. Failing to mandate the use of a lightning protection system on structures where the CSST product was installed;

j. Failing to disseminate to consumers, specifically including Mr. Chang, and other intermediaries adequate instructions addressing ways to protect the CSST product from failing;

k. Failing to test the CSST product to ensure its integrity and ability to withstand the electrical charge emitted from a direct or indirect lightning strike without being compromised;

l. Failing to warn consumers, specifically including Mr. Chang, and intermediaries that a 6 AWG bonding/jumper wire will not sufficiently dissipate the electrical charge emitted from a lightning strike;

m. Failing to warn consumers, specifically including Mr. Chang, and intermediaries, that lightning induced CSST failures can cause fires and loss of life;

n. Otherwise, failing to use due care in manufacturing and marketing the CSST product to consumers, specifically including Mr. Chang;

o. Failing to make safe all premises known to have used CSST gas plumbing by recalling the product for replacement with a safer alternative design;

p. Failing to warn consumers, specifically including Mr. Chang, that the yellow jacket covering the tubing actually focuses the electrical energy from lightning onto the tubing increasing the likelihood of a perforation and ignition of the escaping fuel gas; and

q. Failing to warn consumers, specifically including Mr. Chang, to maintain a specific amount of separation between CSST and other metallic objects including, but not limited to, metallic chimney flue pipes, nail heads, metal staples, through-roof vent pipes, metallic Christmas decorations, electrical wiring, house alarm cables, and the like.

Each of the above-referenced acts and omissions, either singly and/or in combination with others, constitutes negligence, which proximately caused damage to Plaintiff in an amount in excess of the minimum jurisdictional limits of this court.

**Failure to Warn**

**CSST** is an unreasonably dangerous product when installed according to Titeflex's own instructions.

Plaintiff would show further that Defendant TITEFLEX has an ongoing duty to warn consumers (present and past) of the inherent dangers in the CSST product, to wit: failure of the CSST product will occur when an electrical charge from a direct or indirect lightning strike travels across the product. Despite Defendant TITEFLEX knowing since 1998 that its product is prone to perforations from the electrical charge produced by lightning they have failed to warn and/or provide adequate warnings to consumers, including Mr. Chang, about the defect in its CSST product. Defendant TITEFLEX has an absolute duty to warn consumers, and Mr. Chang in particular, of the possibility of failure of the CSST product in certain circumstances, and had an ongoing duty to provide adequate warnings directly to all persons who have this product in their home or business.

Since 1998, Defendant TITEFLEX has had actual knowledge of the danger that its CSST product was failing from the electrical charge emitted from lightning strikes, and has done nothing to modify its product to include appropriate safeguards to ensure against continued failures, has done nothing to warn the public and intermediaries of the real dangers associated with its' CSST product and lightning, and has refused to recall this dangerous product from the market place. Plaintiff alleges that any warnings or instructions that relate to the CSST product are not provided directly to consumers and, specifically, Mr. Chang never received any warnings from Defendant TITEFLEX warning him of the dangers associated with the continued use of CSST in his home.

Defendant TITEFLEX has continued to market and distribute its CSST product knowing that it will not withstand the impact of the electrical charge produced by lightning. Moreover, Defendant TITEFLEX knew that its product would fail if subjected to the electric charge from a lightning strike, and systematically devised a position to defuse and deflect this information by instituting a company-wide response that the CSST product does not fail, but is only damaged by a lightning strike.

Defendant TITEFLEX engaged a public relations firm to address and contain the

problem with the CSST product and to develop and implement a media plan to manage the negative impact associated with the ever-increasing CSST product failures across the country, and in the State of Texas.

Plaintiff would show that the negligent acts and/or omissions on the part of Defendant TITEFLEX were the proximate cause of damages in an amount within the jurisdictional limits of this Court.

## COUNT TWO -- STRICT LIABILITY

Plaintiff incorporates the foregoing paragraphs by reference as though fully set forth herein.

The CSST product in question was defective and unsafe for its intended purposes at the time it left the control of Defendant TITEFLEX, and at the time it was installed in Mr. Chang's residence. Defendant TITEFLEX knew that its product was defective and that it presented the probability of harm to any foreseeable users unless it was free from defects. Therefore, Defendant TITEFLEX had a duty to foreseeable users, and to Mr. Chang in particular, to inspect the CSST product in question to determine whether it would be reasonably fit for its intended purposes and warn or give fair and adequate notice to consumers of the inherently dangerous condition which existed as a result of its defective product.

A defect existed in the CSST product at the time it left the possession of Defendant TITEFLEX that was a producing cause of the occurrence in question, injuries, and damages set forth herein. The defect rendered the CSST product in question unreasonably dangerous as designed, taking into consideration the utility of the product and the risk involved in its use. A safer alternative design has existed for centuries in the form of black iron pipe that would have eliminated the risk of the occurrence in question without substantially impairing the product's utility and was economically and technologically feasible at the time the product left the control of Defendant TITEFLEX by the application of existing or reasonably achievable scientific knowledge. Defendant's CSST product, in comparison to black iron pipe, has substantially greater susceptibility to perforation by lightning-induced energy than does black iron pipe, rendering Defendant TITEFLEX's product defective and posing substantially greater fire hazard, loss of property and life.

**Safer Alternative Design**

There exists multiple different and better safer alternative designs to the thin-walled

CSST product.

Defendant TITEFLEX could have implemented one or more safer alternative designs including, but not necessarily limited to, incorporating a copper or other metallic wire running the length of the CSST ("safer alternative design"). The safer alternative design would have prevented the electrical charge from the lightning strike, whether direct or indirect, from traveling on the surface of the thin-walled CSST which, in turn, would have prevented the electric charge from perforating the CSST and igniting a fire. Among the safer alternative designs is black iron pipe. For more than 100 years black iron pipe has demonstrated its safety relative to the CSST product as it remains viable and un-compromised after a direct or indirect lightning strike.

Additionally, Defendant TITEFLEX could have implemented an additional safer alternative design by mandating the use of a lighting protection system (LPS) where CSST is installed. The LPS would have addressed known safety concerns and would have prevented, or at least significantly reduced, the probability of the fire which destroyed the Property. Defendant TITEFLEX had available to it sufficient information and knowledge needed in order to advise distributors, installers, and more importantly, consumers, of the safer alternative designs but has wholly failed to incorporate any such safer design with its product.

One or more of the safer alternative designs would have prevented or significantly reduced the risk to Mr. Chang of incurring property damage from failure of the CSST product without substantially impairing the product's utility. Additionally, including one or more of the safer alternative designs with the CSST was economically and technologically feasible at the time the product left Defendant TITEFLEX's control based on the research and scientific knowledge possessed by Defendant TITEFLEX.

The Plaintiff was unaware of the defects inherent in the CSST product in question or of any danger that could result from the use thereof at the time he used the CSST product in question. These defects were the proximate and the producing cause of Plaintiff's damages. Such being the case, Plaintiff invokes the doctrine of strict liability in tort.

## COUNT THREE – BREACH OF EXPRESS AND IMPLIED WARRANTY

Plaintiff incorporates the foregoing paragraphs by reference as though fully set forth herein.

Defendant TITEFLEX held out to the general public, and to Plaintiff specifically, that the CSST product in question would conform with the qualities of the same or similar products. As a result of Defendant TITEFLEX's actions, Defendant TITEFLEX breached an express warranty as set forth in §2.313 of the Texas Business and Commerce Code.

Defendant TITEFLEX held out to the general public, and to Plaintiff specifically, that the CSST product in question would conform with the qualities of the same or similar products. As a result of Defendant TITEFLEX's actions, Defendant TITEFLEX breached an implied warranty of merchantability and usage of trade as set forth in §2.314 of the Texas Business and Commerce Code.

Plaintiff has suffered the damages set forth herein as a result of Defendant TITEFLEX's breach of the foregoing warranties and pleads for recovery of all damages, both actual and consequential, pursuant to the applicable sections of the Texas Business and Commerce Code and more specifically, §2.715(b)(2) of that Code.

## VI. DAMAGES

Plaintiff incorporates the foregoing paragraphs by reference as though fully set forth herein.

As a result of Defendant's negligence, strict liability and breach of express and implied warranties, Eun Og Chang sustained damage to real and personal property in at least the amount of $248,659.39. As the insurance company for Eun Og Chang, State Farm Lloyds paid for the damages sustained by Eun Og Chang as a result of the incident. State Farm Lloyds is exercising its rights to contractual and equitable subrogation by filing this lawsuit against Defendant. After allowing for all just and lawful offsets, payments, and credits, Defendant continues to be indebted to Plaintiff in the total amount of $248,659.39.

Plaintiff hereby asserts its claim for damages as described above. All conditions precedent to Plaintiff's recovery have been performed or have occurred as required.

## VII. REQUEST FOR DISCLOSURE

Plaintiff requests that the Defendant TITEFLEX disclose, within fifty (50) days of the

service of this petition and request, the information or material described in Rule 194.2 of the Texas Rules of Civil Procedure.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff, requests that Defendant TITEFLEX all be cited to appear and answer herein, and that on final hearing, Plaintiff recover:

1. A judgment against Defendant for actual damages in the amount determined by the fact finder, which are well within the jurisdictional limits of this Court;

2. A judgment against Defendant TITEFLEX for damages for negligence, strict liability and breach of express and implied warranties in the amounts pled for herein, which are within the jurisdictional limits of this Court;

3. A judgment against Defendant for pre- and post-judgment interest as allowed by law;

4. A judgment against Defendant for such other and further relief, both general and specific, in equity and at law, to which Plaintiff may be justly entitled.

Respectfully submitted,

**CARPENTER & SCHUMACHER, P.C.**

*/s/ N. Scott Carpenter*
By: _____
**N. Scott Carpenter**
State Bar No. 00790428
**Craig M. Schumacher**
State Bar No. 00791622
Parkway Centre IV
2701 North Dallas Parkway, Suite 570
Plano, Texas 75093
(972) 403-1133
(972) 403-0311 Fax
*ATTORNEYS FOR PLAINTIFF*
*STATE FARM LLOYDS AS SUBROGEE OF*
*EUN OG CHANG*